## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PLUS 352, S.A.,

     Plaintiff,

v.                                 CASE NO. 8:19-cv-2164-WFJ-TGW

PHILIPPE GIRAUD,
NATALIA TUROK a/k/a NATALIA
GIRAUD, and ACCESSORY 4G LLC,

     Defendants.

_____/

## ORDER IN PROCEEDINGS SUPPLEMENTAL: SUMMARY JUDGMENT AND DEFAULT FINAL JUDGMENT

Before the Court is Plaintiff's Motion for Entry of a Default Judgment against Defendant Accessory 4G LLC ("Accessory 4G") (Dkt. 106), the response and reply (Dkts. 109, 112), Plaintiff's Motion for Summary Judgment against Defendant Natalia Turok and Motion for Partial Summary Judgment against Defendant Philippe Giraud and undisputed facts (Dkts. 110, 111), and the response and reply (Dkts. 113, 114).  After careful review of all the parties' submissions and the entire file, the Court concludes summary judgment should be granted and default judgment entered.

## BACKGROUND

## <u>The Underlying Action</u>

The original defendants in the underlying action in this case prior to proceedings supplemental are Licensed Accessories USA LLC ("Licensed Accessories") and B2B Tech USA LLC ("B2B").  Plaintiff, a Luxembourg entity, is a supplier and vendor of goods (memory cards and USB flash drives) to Amazon in the United Kingdom, Italy, and France.  Dkts. 26, 50.  B2B Tech and Licensed Accessories are vendors for Amazon in various countries including the United States.  *Id*.  The parties entered into agreements whereby B2B and Licensed Accessories sold the goods and Plaintiff shipped those goods directly to the Amazon fulfillment center.  *Id*.  Plaintiff was to receive payment from B2B Tech and Licensed Accessories based on an agreed formula once Amazon paid B2B and Licensed Accessories.  *Id*.[1]  Plaintiff did not receive payment, despite the parties agreeing to a discounted invoice price.  Dkts. 29, 53.

The amended and operative complaints alleged against Licensed Accessories breach of express and implied-in-fact contract, unjust enrichment, account stated, and fraud; and against B2B Tech breach of express and implied-in-fact contract, unjust enrichment, and account stated.  Dkts. 26, 50.  The companies did not

---

[1] According to Mr. Giraud, Plaintiff sent the inventory to Amazon, Amazon paid Licensed Accessories, and then Licensed Accessories "reimbursed [Plaintiff] minus incentives upon which the companies were agreed."  Dkt. 114-5.

respond to the complaints.  A default final judgment in the sum certain amount of

$681,663.55 was entered against Licensed Accessories in May 2020 as to the

account stated claim only.  Dkts. 36, 37, 38.  Likewise, a default final judgment in

the sum certain amount of $51,223.38 was entered against B2B in January 2021 as

to the account stated claim only.  Dkts. 54, 55, 59.  Writs of execution issued

against each entity, which executions remain valid and outstanding.  Dkts. 45, 63,

64-1 ¶¶ 4, 7 (affidavit of Plaintiff's counsel).

### The Proceedings Supplemental

Plaintiff next filed a motion for commencement of proceedings

supplemental.  Dkt. 64.  The motion was granted and permitted bringing a

fraudulent transfer claim under Chapter 726 of the Florida Statutes, known as

Florida's Uniform Fraudulent Transfer Act ("FUFTA"), in a proceeding

supplementary via a supplemental complaint in this case.  Dkt. 65 (order citing

*Kearney Constr. Co. v. Travelers Cas. & Sur. Co. of Am.*, 8:09-cv-1850-JDW-

CPT, 2020 WL 6801863 (M.D. Fla. Nov. 19, 2020)).

Plaintiff seeks relief in these proceedings supplemental against three

transferee Defendants: Mr. Giraud, his wife Ms. Turok,[2] and Accessory 4G, which

is a limited liability company with its place of business listed as the individual

---

[2] At all relevant times, Mr. Giraud and Ms. Turok were married.  Dkt. 95 at 2.

Defendants' residence in Florida.  Dkt. 94 at 2.  The amended supplemental complaint brought under section 56.29(9), Florida Statutes, asserts actual and constructive fraudulent transfers under FUFTA: 1) from Licensed Accessories to Mr. Giraud (Counts I–III); 2) from Licensed Accessories to Ms. Turok (Counts IV–VI); 3) from Licensed Accessories to Accessory 4G (Counts VII–IX); 4) from B2B to Mr. Giraud (Counts X–XII); 5) from B2B to Ms. Turok (Counts XIII–XV); and 6) from B2B to Accessory 4G (Counts XVI–XVIII).  Dkt. 94 at 1–83.  The individual Defendants (Ms. Turok and Mr. Girard) filed an Amended Answer *pro se*.  Dkt. 103.

A clerk's default was entered against the business entity Accessory 4G on November 29, 2021.  Dkt. 102.  Plaintiff moved for a default final judgment against Accessory 4G on January 3, 2022.  Dkt. 106.

In response to the motion for default, and for the first time, counsel appeared for all three Defendants on January 5, 2022.  Dkt. 107.  Seven days later, on January 12, Defendants' counsel filed a substantive response to the motion for default final judgment against the corporate Defendant Accessory 4G.  Dkt. 109.  On January 14, Plaintiff's counsel filed a motion for summary judgment against the individual Defendants.  Dkt. 110.  Defendants' counsel filed a response on behalf of the individual Defendants.  Dkt. 113.

## SUMMARY JUDGMENT
## AGAINST INDIVIDUAL DEFENDANTS

### <u>Legal Standard</u>

Summary judgment is appropriate where there is no genuine dispute regarding any material fact. Fed. R. Civ. P. 56(a). Materiality is defined by the substantive law concerning the elements of the claim which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (1997). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must view the record, and all its inferences, in the light most favorable to the nonmoving party, in this case the individual Defendants. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Neither credibility determinations nor weighing the evidence may play any role in summary judgment proceedings. *Anderson*, 477 U.S. at 249. A nonmovant's response cannot consist of a conclusory affidavit and expect to survive summary judgment. *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (noting a nonmovant's affidavit cannot be conclusory, even though it may be self-serving). A sworn denial of a material fact, however, may create a genuine issue that would require a credibility determination best left for the trier of fact.

5

## Claims at Issue: Mr. Giraud

Plaintiff moves for partial summary judgment against Mr. Giraud on Count I for actual fraudulent transfers of funds from Licensed Accessories. Dkt. 110 at 6. Plaintiff received its last payment from Licensed Accessories in April 2019. Dkt. 110-1 at 1. The transfers at issue from Licensed Accessories to Mr. Giraud occurred from June 5, 2019, through May 6, 2020, and total $95,535.85. Dkt. 110 at 4. During this period, Licensed Accessories received a total of $157,104.98 from Amazon for goods Plaintiff had shipped to Amazon in fulfillment of Licensed Accessories' sales to Amazon. *Id*.; Dkt. 110-1 at 2. Plaintiff was Licensed Accessories' sole supplier during this time. Dkt. 110-1 at 3.

Plaintiff also moves for partial summary judgment against Mr. Giraud on Count X for actual fraudulent transfers of funds from B2B Tech. Dkt. 110 at 6. Plaintiff received its last payment from B2B Tech on April 3, 2019. Dkt. 110-1 at 1. The transfers at issue from B2B Tech to Mr. Giraud began on April 4, 2019, and continued through January 29, 2020, and totaled $40,316.10. Dkt. 110 at 5. During this period, B2B Tech received payments from "Currency Direct Inc," a foreign exchange provider, representing Amazon payments to B2B Tech for goods supplied by Plaintiff and sold by B2B Tech. Dkt. 110-1 at 3.

## Claims at Issue: Ms. Turok

Plaintiff moves for summary judgment against Ms. Turok on Counts IV and

XIII for actual fraudulent transfers of funds from the same two entities.  Dkt. 110

at 6.  Only two transfers were made to Ms. Turok—one from Licensed Accessories

for $10,000, and the other from B2B Tech for $39,000, both on July 12, 2019.  *Id.*

at 5.

## Actual Fraudulent Transfers

Plaintiff argues that Licensed Accessories and B2B Tech's subject transfers

to the individual Defendants were made with the actual intent to defraud Plaintiff.

*Id.* at 8.  Under FUFTA, a transfer made by a debtor is fraudulent as to either a

present or future creditor if the transfer was made with the "actual intent to hinder,

delay, or defraud any creditor of the debtor."  Fla. Stat. § 726.105(1)(a).  To

establish a *prima facie* case of actual fraud, a plaintiff must prove that there was a

creditor to be defrauded, there was a transfer of property, and there was a debtor

intending fraud.  *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir.

2020) (citing *Wiand v. Lee*, 753 F.3d 1194, 1199–1200 (11th Cir. 2014)).

A creditor is a person who has a claim.  Fla. Stat. § 726.102(5).  A claim

includes a right to payment, and this statutory language is "extremely broad."  *Id.* §

726.102(4); *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 830 (11th Cir. 2006).  It

is uncontested that Plaintiff was a creditor under FUFTA of both Licensed

Accessories (since at least April 25, 2018) and B2BTech (since at least February 4, 2019).  Dkt. 110 at 9.

A transfer includes the payment of money.  Fla. Stat. § 726.102(14).  It is undisputed that the transfers from Licensed Accessories and B2B Tech to Mr. Giraud and Ms. Turok are transfers under FUFTA.

The last element—the intent of the debtor to hinder, delay, or defraud—is difficult to prove through direct evidence.  Given this obstacle, courts review the statutory "badges of fraud" to determine whether actual fraud occurred.  *Chase Bank USA, N.A. v. Jacucci*, No. 19-62318-Civ-Singhal/Valle, 2021 WL 2689995, at *6 (S.D. Fla. Feb. 22, 2021) (citing Fla. Stat. § 726.105(2)(a)-(k)); *In re McCarn's Allstate Fin., Inc.*, 326 B.R. 843, 849–50 (Bankr. M.D. Fla. 2005).  This non-exhaustive list of badges includes whether, for example, the transfer was to an insider, the debtor retained control of the property after transfer, the transfer was concealed, the debtors had been threatened with a lawsuit before the transfer, and the debtors received less than reasonably equivalent value.  Fla. Stat. § 726.105(2)(a)–(d), (h).  The existence of several badges of fraud, as opposed to one badge of fraud, creates a *prima facie* case and raises a rebuttable presumption that the transaction is void.  *Wiand*, 753 F.3d at 1200 (citation omitted).

Apart from the statutory factors, courts may also consider other relevant circumstances surrounding the transfer.  *Id.*  "The standard to determine whether a

transfer is fraudulent under Florida law is the preponderance of the evidence standard." *In re Young*, 235 B.R. 666, 669 (Bankr. M.D. Fla. 1999) (citation omitted).

*Badges of Fraud—Transfers to Insiders*

The statutory definition of insiders is non-exhaustive.[3]  Fla. Stat. § 726.102(8); *In re Bifani*, 580 F. App'x 740, 745 (11th Cir. 2014) (citation omitted). "A close relationship between a transferor debtor and a transferee is a factor equivalent to a badge of fraud which should be considered in determining fraudulent intent." *In re Bifani*, No. 8:13-cv-2197-JDW, 2014 WL 272920, at *5 (M.D. Fla. Jan. 23, 2014) (quoting *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1499 (11th Cir. 1997)).  A close business relationship may constitute a badge of fraud.  *Id.* (citation omitted).

---

[3] Section 726.102(8) provides in full:

"Insider" includes:

(a) If the debtor is an individual: 1. A relative of the debtor or a general partner of the debtor; 2. A partnership in which the debtor is a general partner; 3. A general partner in a partnership described in subparagraph 2.; or 4. A corporation of which the debtor is a director, officer, or person in control.

(b) If the debtor is a corporation: A director of the debtor; 2. An officer of the debtor; 3. A person in control of the debtor; 4. A partnership in which the debtor is a general partner; 5. A general partner in a partnership described in subparagraph 4.; or 6. A relative of a general partner, director, officer, or person in control of the debtor.

(c) If the debtor is a partnership: 1. A general partner in the debtor; 2. A relative of a general partner in, a general partner of, or a person in control of the debtor; 3. Another partnership in which the debtor is a general partner; 4. A general partner in a partnership described in subparagraph 3.; or 5. A person in control of the debtor.

(d) An affiliate, or an insider of an affiliate as if the affiliate were the debtor.

(e) A managing agent of the debtor.

The Court finds a close relationship existed between Mr. Giraud and Licensed Accessories as well as Mr. Giraud and B2B Tech. B2B Tech was formed in May 2017 and is wholly owned and controlled by Mr. Giraud. Dkt. 111 ¶ 14; Dkt. 113-1. B2B Tech has only ever had one employee—Oxana Damm. Dkt. 111 ¶ 15. Licensed Accessories was formed in January 2018 and was wholly owned and controlled by Mr. Giraud until at least May 2020. *Id*. ¶ 5; Dkt. 113-1. Licensed Accessories has never had an employee. Dkt. 111 ¶ 8. The sole place of business for the entities was the Florida residence of the individual Defendants. *Id*. ¶¶ 7, 13. Defendants do not contest that the relationship is close.

The Court finds the statutory insider familial relationship between husband and wife is sufficient to make the transfer from Licensed Accessories and B2B Tech to Ms. Turok a transfer to an insider. *See* Fla. Stat. § 726.102(8), (13). Ms. Turok performed no meaningful services for either Licensed Accessories or B2B Tech. She was not an employee or shareholder of either entity; she did not know about the dealings of the entities. Dkt. 95 at 2. The two transfers to Mr. Giraud's wife are indicia of the close relationships between Mr. Giraud and the entities, and Mr. Giraud may not skirt his close relationship with the debtors by having those companies transfer money to his wife.

Defendants do not contest these relationships. Defendants rely on the general premise that summary judgment is proper in the context of badges of fraud

only "if no other evidence is proffered to plausibly suggest another explanation for the transfer." Dkt. 113 at 3 (citing *Zurich Servs. Corp. v. Pro. Mgmt. Servs. Grp., Inc.*, 8:13-cv-1896-T-30AAS, 2016 WL 7974653, at *5 (M.D. Fla. Oct. 21, 2016) (quoting *German Am. Cap. Corp. v. Morehouse*, No. 13-80704-Civ, 2014 WL 2511307, at *2 (S.D. Fla. June 2014)), *adopted in part*, 2016 WL 6695079 (M.D. Fla. Nov. 15, 2016)). The courts in *Zurich* and *Morehouse*, however, each determined that the defendants failed to suggest any plausible or legitimate explanation for the transfers and therefore could not overcome the strong inference of fraud created by the evidence. Mr. Giraud and Ms. Turok have not provided any explanation as to why they would not be considered insiders for purposes of FUFTA.

The only argument that could apply to the insider badge is Defendants' claim that the same-day transfers to Ms. Turok were mistakenly made to her. Dkt. 113 at 4. The only explanation for this mistake is that the transfers were intended for Mr. Giraud as compensation "in the ordinary course of the operations of B2B Tech." Dkt. 113-1 ¶¶ 7, 10. Even if the money was meant for Mr. Giraud, he remains an insider, and the transfers were made from the debtors to insiders.

*Badges of Fraud—Debtors threatened with lawsuit*

Licensed Accessories and B2B Tech were threatened with the filing of a lawsuit in June 2019. Dkt. 111 ¶¶ 11, 21. The underlying lawsuit here was filed in

11

late August 2019.  Dkt. 1.  The two transfers to Ms. Turok took place on July 12, 2019, which was after this lawsuit was threatened.  Dkt. 111 ¶¶ 12, 22.  The transfers to Mr. Giraud took place from Licensed Accessories from June 5, 2019, to May 6, 2020, and from B2B Tech from April 4, 2019, to January 29, 2020.  Dkt. 110 at 13–14.  Specifically, on July 11, 2019, B2B Tech received $20,000 from Licensed Accessories, and B2B Tech transferred $15,000 to Mr. Giraud and $3,750 to Mr. Giraud's immigration lawyer for E-2 visa services.  Dkt. 111 ¶ 20.

Defendants do not contest the fact they had been threatened with a lawsuit in July 2019.[4]  Rather, they claim Mr. Bulent Yilmaz, the head of sales and purchasing of Plaintiff, threatened them physically in April or May 2019.  Dkt. 113-1 ¶¶ 4, 7, 13.  Mr. Giraud avers the transfers "were due to fear of physical harm from Bulent Yilmaz due to an incident in April or May of 2019 when, over the phone, [he] told me he would send a bunch of Mexicans to beat me, my wife,

---

[4] Mr. Giraud avers in conclusory fashion that the transfers "were not made with actual intent to hinder, delay, or defraud Plaintiff."  Dkt. 113-1 ¶ 3.  Conclusory allegations—those lacking specific facts to support the allegations—do not create genuine issues of fact for purposes of summary judgment.  *See Stein*, 881 F.3d at 857 (stating "affidavit cannot be conclusory" and citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  On summary judgment, self-servicing statements that Mr. Giraud lacked the requisite intent do not overcome the objective evidence of indicia of fraud.  *See In re Phillips & Hornsby Litig.*, 204 F. App'x 398, 401 (5th Cir. 2006) (affirming summary judgment); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) (affirming summary judgment where no issue of genuine issue of material fact existed as to badges of fraud).

and my disabled son up and he would send a bunch of Italians to beat my parents up." *Id*. ¶ 13.  Mr. Yilmaz denies this allegation in his affidavit.  Dkt. 114-1 ¶ 2.[5]

Whether the physical threat occurred is contested.  Assuming in the light most favorable to the Defendants as nonmoving parties that there was a physical threat, Defendants have cited no authority in support of a physical threat having any effect on the outcome of this action under FUFTA.  Thus, while the existence of a physical threat is disputed, it is not a material fact that creates a genuine issue sufficient to defeat summary judgment because the evidence otherwise supports a finding of fraud.

*Badges of Fraud—Concealed transfers*

Mr. Yilmaz avers the subject transfers were concealed from Plaintiff.  Dkt. 110-1 ¶¶ 13, 14.  Defendants do not contest that the transfers were concealed from Plaintiff.

*Badges of Fraud—Debtors received less than reasonably equivalent value*

Mr. Giraud contends that some of the transfers to him represented either his compensation for his services to B2B Tech and Licensed Accessories or were in exchange for services he provided to them.  Dkt. 113 at 4; Dkt. 113-1 ¶¶ 6, 9, 12. He avers that the two transfers to his wife were also for his compensation.  Dkt.

---

[5] Mr. Yilmaz specifically denies that he ever physically threatened Mr. Giraud or Ms. Turok or stated that he would send people to assault Mr. Giraud and his family.  Dkt. 114-1 ¶ 2.

113 at 4; Dkt. 113-1 ¶¶ 7, 10.[6]  Plaintiff counters with a page from Mr. Giraud's

petition for a non-immigrant visa, signed by Mr. Giraud, wherein he states he did

not "personally provide[] any labor or services on behalf of Licensed Accessories."

Dkt. 114-5.  Mr. Giraud also states he only passively invested in Licensed

Accessories.  *Id.*

Neither Mr. Giraud nor Ms. Turok were employees of either Licensed

Accessories or B2B Tech.  Licensed Accessories had no employees.  Dkt. 114-2 at

37–38 (excerpts of Mr. Giraud's deposition); Dkt. 111 ¶ 8.  B2B Tech had only

had one employee.  Dkt. 114-2 at 38; Dkt. 111 ¶ 15.  The transfers to Mr. Giraud

were distributions.  Dkt. 114-3 at 19 (excerpts from the debtors' CPA's

deposition).  Under Florida law, distributions do not include "amounts constituting

reasonable compensation for past or present service."  Fla. Stat. § 605.0102(17)(b).

Therefore, the transfers to Mr. Giraud or his wife did not represent compensation

for services but transfers to Mr. Giraud in his capacity as a member of the debtor

companies.  *See Id.*

Distributions based on an owner's equity interest do not hold a reasonably

equivalent value.  *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 267–68

(Bankr. N.D. Tex. 2003) (finding cash distributions were not part of compensation

---

[6] Mr. Giraud alternatively asserts that the transfers were made to his wife in response to the physical threats Mr. Yilmaz made to Mr. Giraud's family.  Dkt. 113 at 4; Dkt. 113-1 ¶ 7.

but were distributions based on equity ownership for which company did not receive reasonably equivalent value);[7] *In re Teknek, LLC*, 343 B.R. 850, 861 (Bankr. N.D. Ill. 2006) ("[A] distribution of profits or dividends to L.L.C. members that is not compensation or salary for services rendered is not a transfer in exchange for reasonably equivalent value under the Uniform Fraudulent Transfer Act. [citing *In re Brentwood*]").  Based on the undisputed facts that neither Mr. Giraud nor Ms. Turok were employees of either debtor and that the husband and wife did not stand to receive compensation for any services, the Court finds the transfers were made absent the debtors receiving reasonably equivalent value.  That Mr. Giraud avers that the transfers were compensation does not alter

---

[7] This case is cited with approval in *Kardash v. Comm'r of IRS*, 866 F.3d 1249, 1255–56 (11th Cir. 2017):

> [W]hat little case law exists on this issue suggests that dividend payments are not considered compensation as a matter of law. *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255 (Bankr. N.D. Tex. 2003), provides a good example. In that case, a bankruptcy trustee sought to set aside . . . several dividend payments that the recipients claimed were compensation for services rendered.  As in this case, the recipients argued that the dividends were designed to make up for a salary discrepancy, with one recipient explicitly arguing that he "viewed the excess cash flow distribution as a bonus." *Id*. at 267. The bankruptcy court sided with the trustee. Noting that "none of [the recipients] had an employment contract . . . providing that the excess cash flow distribution would be part of their salary or a bonus as part of their compensation," the court looked to the form of the contested transfer payments and concluded that they were dividends and not compensation. . . . We hold that the same principles apply here.

or negate the other objective evidence that they were not entitled to receive compensation from the debtors.[8]

Based on the four statutory badges of fraud discussed above, the Court finds actual fraud. Mr. Giraud and Ms. Turok have not provided a plausible explanation for the transfers sufficient to overcome the strong inference of fraud and sufficient to avoid summary judgment. Partial summary judgment is entered against Mr. Giraud and summary judgment is entered against Ms. Turok for the specific transfers sought, with the uncontested amounts substantiated by Mr. Giraud's deposition and bank invoices attached. The amounts are calculated as follows: 1) transfers from Licensed Accessories to Mr. Giraud total $94,732.56 ($95,535.85 minus $803.29 transferred from Mr. Giraud to Licensed Accessories); transfers from B2B Tech to Mr. Giraud total $18,296.10 ($40,316.10 minus $22,020.00 from Mr. Giraud to B2B Tech); one transfer from Licensed Accessories to Ms. Turok of $10,000.00; and one transfer from B2B Tech to Ms. Turok of $39,000.00.

---

[8] Apart from the badges of fraud, Plaintiff correctly contends that consideration may be given to other potentially fraudulent conduct not specifically addressed in FUFTA. *See United States v. S. Cap. Constr., Inc*. 758 F. App'x 676, 681 (11th Cir. 2018). Fraudulent conduct may be inferred "from the circumstantial evidence and the surrounding circumstances of the transactions." *Id*. (citation omitted). Florida limited liability companies may not make a distribution if after the distribution the company would not be able to pay its debts as they come due. Dkt. 110 at 14 (citing Fla. Stat. § 605.0405). The record reveals that B2B Tech filed for bankruptcy protection in February 2020. Dkt. 22. The Court determines it need not rely on this additional factor to find actual intent from the four statutory badges of fraud discussed in this order.

Dkt. 110 at 15–16.  Under FUFTA, money judgments may be entered against the transferees.  *See Pasternack v. Klein*, No. 8:16-cv-482-T-33CPT, 2019 WL 330593, at \*9 (M.D. Fla. Jan. 25, 2019).

Ms. Turok's liability is joint and several with Mr. Giraud's liability.  *Cont'l Cas. Co. v. Hardin*, No. 8:16-cv-322-17TGW, 2016 WL 11234458, at \*8 (M.D. Fla. Dec. 5, 2016) (citing authority for joint and several liability under FUFTA), *adopted by* 2017 WL 979098 (M.D. Fla. Mar. 14, 2017).  Recovery may not exceed the amount of the underlying judgments for Licensed Accessories ($681,663.55) and for B2B Tech ($51,223.38), respectively.  Fla. Stat. § 726.109(2) ("the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less"); *TTT Foods Holding Co. v. Namm*, No. 16-cv-81798, 2017 WL 2901329, at \*12, 16 (S.D. Fla. May 19, 2017) (holding joint liability up to amount of entire judgment of $233,593.59).  Because the total amount of transfers from B2B Tech ($57,296.10) exceeds the amount of the underlying judgment ($51,223.38), the judgment here is limited against B2B Tech to $51,223.38.  The amount of this judgment will be reduced by $6,072.72 with respect to transfers from B2B Tech.

It is therefore **ORDERED AND ADJUDGED** as follows:

1)      Plaintiff's Motion for Summary Judgment against Defendant Natalia Turok and Motion for Partial Summary Judgment against Defendant Philippe Giraud (Dkt. 110) is granted.

2)      Partial summary judgment is entered in favor of Plaintiff and against Mr. Giraud in the amount of $113,028.66 ($94,732.56 of transfers from Licensed Accessories plus $18,296.10 of transfers from B2B Tech).

3)      Summary judgment is entered in favor of Plaintiff and against Ms. Turok in the amount of $42,927.28 ($10,000.00 of transfers from Licensed Accessories plus $39,000.00 of transfers from B2B Tech minus the overage of $6,072.72 from the underlying judgment against B2B Tech).  Mr. Giraud and Ms. Turok are jointly and severally liable up to $42,927.28.

4)      The Clerk is directed to enter final summary judgments in accordance with paragraphs 2 and 3 and include the language "for which sum let execution issue."

**DEFAULT JUDGMENT AGAINST ACCESSORY 4G**

In response to Plaintiff's motion for default final judgment against Accessory 4G, Accessory 4G requests to vacate the Court's order striking the entity's answer to the original complaint for proceedings supplemental, which was filed without counsel. Dkt. 109.  Accessory 4G now desires to file an answer through counsel, long after the time for amending pleadings (October 1, 2021) has

passed.  Dkt. 78.  No "good cause" argument to extend the time for amendment is made pursuant to Federal Rule of Civil Procedure 16(b)(4).  *See Thorn v. Blue Cross & Blue Shield of Fla., Inc.*, 192 F.R.D. 308, 309 (M.D. Fla. 2000) (stating Rule 16(b) governs motions for leave to amend filed beyond the time prescribed by scheduling order).  Only after good cause is shown may the court consider whether leave should be granted under Rule 15.  *Id*. at 309–10.  The good cause standard under Rule 16(b)(4) "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'"  *Harris v. Reverse Mortg. Sol. Inc.*, 800 F. App'x 708, 711 (11th Cir. 2020) (citation omitted).  Considering only Rule 15(a) "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  *Id*. (citation omitted).[9]

Here, no good cause has been shown under Rule 16(b) to permit Accessory 4G to file its answer.[10]  No diligence has been demonstrated on the part of Accessory 4G.  The entity has known since early August 2021 that it was required to secure counsel to file pleadings.  *See* Dkt. 80.  Accessory 4G failed to heed this

---

[9] Rule 15(a) permits amendment freely before the deadline in the scheduling order unless, for example, undue delay, bad faith, undue prejudice to the opposing party, or futility of the amendment has been shown.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[10] Accessory 4G has not moved to set aside the clerk's entry of default, which is a separate "good cause" determination under Rule 55(c).

Court's caution that failure to file an answer through counsel would result in a clerk's default upon proper motion.

In any event, the proposed answer attached to the response sets forth no affirmative defenses other than to add verbiage in its denials about Plaintiff providing counterfeit goods to Amazon. Such allegations serve only to collaterally attack and relitigate the underlying judgment asserting claims of the original debtors. Plaintiff cites authority for the proposition that transferees cannot challenge the underlying lawsuit in a proceedings supplemental. *See*, *e.g.*, *Mansfield v. Pierce*, 153 F.3d 721 (4th Cir. 1998) (table) ("[a] judgment which has been obtained by a defrauded creditor is, as against the transferee of the property, conclusive as to the fact of indebtedness on which it is based") (quotation citation omitted). Although an independent search has not revealed binding authority, the very nature of a proceedings supplemental under Florida law is founded on "retriev[ing] money that a judgment debtor passed to a third-party." *Wiand v. Lee*, No. 8:10-cv-210-T-17MAP, 2014 WL 12684528, at *1 (M.D. Fla. Jan. 30, 2014) (citation omitted). Nothing under FUFTA changes the focus of retrieving money under a judgment, and nothing permits the transferee to challenge the underlying judgment in the FUFTA case.

Plaintiff seeks $4,953.11 in transfers from both Licensed Accessories ($4,410.00) and B2B Tech ($543.11), which is supported by bank statements of

20

Accessory 4G.  Dkt. 106 at 4–6.  Having shown no good cause and having provided no defenses under FUFTA, Accessory 4G cannot avoid a money judgment sought against it.  The amount of judgment against Accessory 4G is limited to $4,410.00 representing transfers from Licensed Accessories because the limit of the underlying judgment against B2B Tech has been reached against the individual Defendants.

It is therefore **ORDERED AND ADJUDGED** as follows:

1)      Defendant's opposition, which includes a motion to file an answer (Dkt. 109), is denied.

2)      Plaintiff's motion for default final judgment against Accessory 4G (Dkt. 106) is granted.

3)      Final default judgment is entered in favor of Plaintiff and against Accessory 4G in the amount of $4,410.00 (4,953.11 minus $543.11).  Accessory 4G's liability is joint and several with the individual Defendants Mr. Giraud and Ms. Turok.

4)      The Clerk is directed to enter a default final judgment in accordance with paragraph 3, to include the language "for which sum let execution issue."

**DONE AND ORDERED** at Tampa, Florida on March 29, 2022.

WILLIAM F. JUNG
**UNITED STATES DISTRICT JUDGE**

**COPIES FURISHED TO:**
Counsel of record